2017 BNH 013           Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                    Bk. No. 16-11676-BAH
                                                                          Chapter 13
Ann E. Caraballo,
            Debtor

*Gerald D. Neiman, Esq.*                        *Carl D. Hanson, Esq.*
*Gerald D. Neiman*                              *Hanson Law Offices*
*Attorney at Law, PLLC*                         *New London, New Hampshire*
*Keene, New Hampshire*                          *Attorney for Christopher Lopez*
*Attorney for Debtor*

## MEMORANDUM OPINION

### I.  INTRODUCTION

Before the Court is the Debtor's amended chapter 13 plan, dated March 13, 2017 (Doc. No. 23) (the "Plan").  Creditor Christopher Lopez ("Lopez") has objected to confirmation of the Plan on several bases, including lack of good faith, failure to devote all disposable income to the Plan, and the existence of a postpetition domestic support obligation ("DSO") arrearage.  For the reasons set forth below, the Court finds Lopez's objections to be without merit and will confirm the Plan.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### II.  FACTS

The Debtor filed the Plan on March 13, 2013.  Soon after, Lopez filed an objection to the Plan's confirmation (Doc. No. 28) that lists four objections to confirmation without legal or factual support.  Later, on June 29, 2017, Lopez filed a supplement, setting out a more fulsome

1

basis for the objection as it relates to projected disposable income.  The Court held a confirmation hearing on the Plan on July 7, 2017.  At the hearing, the Court heard oral argument from the Debtor and Lopez.  Lawrence Sumski, the chapter 13 trustee, also participated in the hearing and supported confirmation of the Plan.  The Court did not take any evidence at the hearing, and the parties did not request the opportunity to present any.  At the conclusion of the hearing, the Court took the matter under advisement.  The following background information is taken from the Debtor's bankruptcy schedules (Doc. No. 12) —of which the Court takes judicial notice—as well as the Plan, the uncontested factual allegations of the parties, where relevant and material, and the record of the confirmation hearing.

The Plan proposes to pay the chapter 13 trustee $138 per month for 60 months, for a total of $8,280.  The Debtor's current monthly income of $10,269.40 is above the state median income threshold, so she was required to fill out Official Form 122C-2.[1]  This form indicates that the Debtor's monthly disposable income is -$234.62.[2]  In part, the Debtor arrived at this result by deducting monthly payments for two secured debts: (1) $500 to Eastman Community Association for condominium fees and (2) $1,200 to Seterus, Inc. for payment of a mortgage.  Both of these payments relate to real property located at 50 Greensward Drive in Grantham, New Hampshire (the "Grantham Property").  Schedule A indicates that the Debtor remains on the title, but that the Grantham Property itself was awarded to her "ex-spouse," presumably Lopez, in a divorce decree.  Schedule D indicates contractually due debts to both the Eastman Community Association and Seterus, Inc.  The Plan proposes to surrender the Grantham Property.  Finally, the Debtor's Schedule I shows a combined monthly income of $6,326.38, and her Schedule J

---

[1] Official Form 122C-1, line 15a.
[2] Official Form 122C-2, Line 45.

shows a monthly net income of $138.22. Schedule J includes a mortgage payment of $1,180, but does not include any expenses relating to the Grantham Property.

Lopez's main argument against confirmation is that the Debtor has failed to devote all of her projected disposable income to plan payments. First, Lopez argues that it was impermissible for the Debtor to deduct the mortgage and condominium payments relating to the Grantham Property on Form 122C-2 while at the same time proposing to surrender it in the Plan. Second, Lopez argues that the Debtor's monthly income has increased by approximately $77 postpetition and that this income ought to be included in the Debtor's plan payments. At the confirmation hearing, the Debtor did not contest this allegation, but argued that the income increase was offset by a commensurate increase in her monthly DSO payment to Lopez. Lopez did not challenge this argument. Rather, he argued that the Debtor was in arrears on the DSO postpetition. In response, the Debtor presented Lopez with a bank check purporting to cure the entire amount of the DSO arrearage. Lopez accepted this check, resolving the DSO arrearage issue.

## III. DISCUSSION

### A. Disposable Income

If either the chapter 13 trustee or a creditor objects to confirmation of a chapter 13 plan, § 1325(b)(1) requires a debtor to devote all "projected disposable income" to payments to unsecured creditors.[3] In turn, "disposable income" is defined in § 1325(b)(2) as "current monthly income" less certain exclusions[4] and deductions. All debtors are permitted to deduct

---

[3] "(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).

[4] The parenthetical phrase in (b)(2) reads: ". . . other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child." 11 U.S.C. § 1325(b)(2). See Kibbe v. Sumski (In re Kibbe), 361 B.R. 302, 310-11 (B.A.P. 1st Cir. 2007).

3

from their income "amounts reasonably necessary to be expended for maintenance or support," domestic support obligations, charitable contributions, and business expenses, subject to various exceptions and caveats. See § 1325(b)(2). For debtors with income greater than "the median family income of the applicable State," § 707(b)(2) determines many of the expense deductions.[5] After deducting these expenses, the resulting number is the starting point for determining projected disposable income. Kibbe v. Sumski (In re Kibbe), 361 B.R. 302, 311 (B.A.P. 1st Cir. 2007). It is only the starting point because § 1325(b)(2) defines the term "disposable income" without the adjective "projected." Id. at 307 ("The BAPCPA amendments to § 1325(b)(2) make "disposable income" dependent on a debtor's "current monthly income," but leave the term "*projected* disposable income" undefined."). In Hamilton v. Lanning, the Supreme Court held that the inclusion of the word "projected" means that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." Hamilton v. Lanning, 560 U.S. 505, 524 (2010).

Kibbe, although decided before Hamilton, aptly describes the practical effect of Hamilton's holding—essentially that the Court need not adhere to the results of the Means Test if those results do not fit with reality:

> Where the income calculation of Form B22C comports with a debtor's actual income at the time of confirmation and as reasonably anticipated for the plan commitment period, no further determination is necessary. See, e.g., In re Teixeira, 358 B.R. 484 (Bankr. D.N.H. 2006). However, where the debtor's income at confirmation or as reasonably anticipated for the plan commitment period is materially different from the debtor's "disposable income" as defined by § 1325(b)(2), the court must depart from the Form B22C calculation.

---

[5] The process of determining a debtor's current monthly income, whether a debtor is "above-median," and what expenses that debtor may deduct under § 707(b)(2) is known as the "Means Test" and currently resides in Official Forms 122C-1 and 122C-2.

In re Kibbe, 361 B.R. 302, 314–15 (B.A.P. 1st Cir. 2007).[6]  Once a court departs from the Means Test, the process outlined in Kibbe and the standard practice in this district involve looking to Schedules I and J[7] and, in rare cases, examining evidence outside of the schedules, if material changes have occurred or are likely to occur after the petition date.  See id. at 315.

     In this case, Lopez makes several arguments relating to projected disposable income.  Lopez initially argues that the Debtor inappropriately deducted the condominium fees and the Grantham Property mortgage payment on the Means Test because (1) the Debtor is surrendering the Grantham Property in her chapter 13 plan and (2) a divorce court ordered that the Debtor would ultimately be responsible for only 50% of the condominium fees, whereas the Debtor deducted the entire amount.  Lopez claims that this argument is supported by both the Hamilton and Kibbe decisions.

     This argument implies a misreading of those cases.  Neither case is about whether particular deductions are appropriately taken in the context of the Means Test.  Rather, those decisions are about whether the Court is obligated to follow the result reached at the end of the Means Test, even when that result does not jibe with reality.  In any event, there is no evidence that the Debtor impermissibly deducted the mortgage and condominium fees relating to the Grantham property.  Such expenses appear to be "scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition."  § 707(b)(2)(A)(iii); see 6-707 Collier on Bankruptcy P 707.04 (16th 2017).  The divorce court order to which Lopez refers does not alter the fact that the Debts were "scheduled as contractually due."[8]  This order requires whoever pays the condominium fees to reimburse the

---

[6] "Form B22C" used to be the designation of the form containing the Means Test.

[7] Using the schedules I and J approach still requires omitting the exclusions set forth in § 1325(b)(2) from income included in schedule I.  See Kibbe 361 B.R. at 315.

[8] See Doc. No. 40, attachment 2, 5th Circuit Family Division-Newport order dated 9/14/2016, ¶ 2.

other party within 14 days; it does not alter the Debtor's contractual duties to the secured creditor.

Next, Lopez argues that based on a May 13, 2017 paystub, the Debtor's income has increased by $77.45 per month and that this increase should be included in projected disposable income. At the confirmation hearing, Debtor's counsel acknowledged this increase in income but argued that the increase was offset by a commensurate increase in payments made on account of a DSO.[9] Lopez did not contest the Debtor's counterargument at the hearing, and the Court has no basis for discrediting the Debtor's position. Accordingly, the Court finds Lopez's argument about the income increase insufficient to affect the projected disposable income analysis.

Finally, the Court addresses what the Debtor's plan actually proposes to pay and whether that amount is appropriate under the standards discussed above. The Debtor currently proposes to pay $138 per month to the chapter 13 trustee. This number appears to be the debtor's monthly net income from Schedule J. The Debtor did not deduct any expenses relating to the Grantham Property on Schedule J, presumably because the Debtor is not actually paying them. The Debtor did not use the -$234.62 number that results from line 45 of the Means Test, because that number does not reflect her actual projected disposable income. The Debtor's approach is consistent with both Hamilton and Kibbe. The Court has no reason to find that the monthly net income from Schedule J is an inaccurate representation of the Debtor's projected disposable income. Accordingly, the Court finds that the Plan complies with § 1325(b)(1).

    B. Domestic Support Obligation Status

---

[9] In fact, the Debtor owes this DSO to Lopez and the arrearage the Debtor cured at the confirmation hearing was apparently caused by the increase in the amount due.

Next, the Court addresses Lopez's argument that the Plan is not confirmable because the Debtor has failed to make postpetition DSO payments to him and the related objection that the Plan does not pay his DSO in full.  At the hearing the Debtor presented Lopez's counsel with a bank check for the full amount of the DSO arrearage.  Lopez's counsel accepted the check and did not challenge that it fully satisfied the arrearage.  Accordingly, the Court finds there is now no evidence of a DSO arrearage.  Given that there is no evidence of an arrearage, the Court also finds that the Plan complies with §§ 1322(a)(2) and 1325(a)(8).

### C.  Good Faith

Lopez's final argument against plan confirmation is a conclusory statement that the Plan was not filed in good faith.[10]  Lopez did not provide any legal or factual support for this legal conclusion in his supplement at Doc. No. 40 or at the confirmation hearing.  The Court has no independent concerns about the Debtor's good faith in proposing this plan.  Accordingly, the Court finds that the Plan has been proposed in good faith.

## IV.  CONCLUSION

For the reasons set forth above Lopez's objections to confirmation of the Debtor's chapter 13 plan are overruled.  The Court will confirm the Plan by separate order.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   September 14, 2017              /s/ Bruce A. Harwood
                                        Bruce A. Harwood
                                        Chief Bankruptcy Judge

---

[10] ¶ 2 of his objection at Doc. No. 28.